Charles O. Hayward, Appellee, v. The Metropolitan West Side Elevated Railway Company, Appellant.

Gen. No. 16,499.

1. STREET RAILWAYS—*when evidence of negligence in operation is sufficient.* A plaintiff testified that he attempted to get on a car of an elevated railroad train nine feet from the end of a platform when the train was standing still, that the gate was wide open and not in motion and that a bell rang as he stepped on. He fell from the car and there was evidence that he was seen falling to the ground. The guards of the train testified that no one attempted to board the train in the manner described, that the train was not started until the gates were closed and the signal bell rung and that they were at their posts of duty and did not see any one fall. *Held,* a verdict for the plaintiff would be sustained.

2. DAMAGES—*when proof of tuberculosis resulting from injury is sufficient.* A man fell thirty feet from a platform, sustaining great injury to his body, suffered great pain and was confined to his bed for four months. His prior health had been good, but since the accident it became poorer and he suffered pains in his head, arms, legs and chest, and lost weight. Four years later he

had a severe cough and six hemorrhages of the lung. The attending physician at the time of the accident testified that he then had no lung trouble, but that he had tuberculosis at the time of the trial and that it was caused by a weakened condition from the injury. *Held*, whether the tuberculosis was the result of the accident was a question for the jury.

3. DAMAGES—*when verdict based upon tuberculosis will not be disturbed.* Where a man falls thirty feet from a platform and sustains severe bodily injuries resulting in a weakened condition, there is evidence that tuberculosis resulted four years later, the instructions for the defendant as to the disease resulting from the injury are positive and clear, and a judgment of $10,500 is reduced to $8,000, a verdict based upon his tubercular condition will not be disturbed.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the HON. JESSE A. BALDWIN, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed November 18, 1912. *Certiorari* denied by Supreme Court (making opinion final).

ADDISON L. GARDNER, for appellant; W. W. GURLEY, of counsel.

THOMAS E. ROONEY and FERDINAND GOSS, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The appellee brought this suit to recover from appellant damages for personal injuries sustained by appellee December 21, 1904, in attempting to board appellant's train at Forty-second Court, Chicago. On a trial the jury returned a verdict for the appellee, assessing his damages at $10,500.00. A remittitur of $2,500 was filed by appellee, and the court, denying a motion for a new trial, entered judgment against the appellant for the sum of eight thousand dollars.

In the various counts of the declaration the negligence alleged was, as stated by the appellant: "first, in suddenly and violently starting the train while plaintiff was attempting to board one of the cars thereof; second, in failing to stop the train a reason-

able length of time to enable plaintiff to board the
same; third, in failure to keep a proper watch or look-
out from said train so that the same might not be
started before plaintiff had safely entered; and,
fourth, in carelessly, negligently, improperly and
recklessly driving, managing and operating said car
while plaintiff was attempting to board the same.''

The appellant urges here two grounds for reversal:

First: ''The court erred in submitting the case to
the jury.'' The argument seems to be, not that there
was no evidence introduced by the appellee tending
to prove his cause of action, but that the verdict was
clearly and manifestly against the weight of the evi-
dence. The appellee testified that he was on his way
to work and was injured about 6:45 on the morning
in question. He said on direct examination, quoting
from the abstract of record: ''The front end of the
second car was nine feet from the extreme east end of
the platform. I started to get on; I stepped on with
my left foot and as I stepped on firmly with my foot
the car started up suddenly and threw me off my bal-
ance against the car and I tried to recover my fall,
and at that time I fell, and that is the last I remember.
At the time I stepped on the car it was standing still.
The gate was wide open. The gate was not in motion.
I heard a bell rung as I stepped on. At the time I
heard the bell rung the gate was opened. The next
thing I knew was the next day at about eleven o'clock,
when my brother came from Wisconsin. At that time
I was in the West Side Hospital, at Harrison and
Ogden.'' He fell from the car, near the east end of
the elevated station platform, to the ground below,
some thirty feet, and was seriously injured. A wit-
ness called by appellee testified that he saw the ap-
pellee falling and saw him strike the ground. None
of the witnesses called by appellant saw the accident.
The testimony of the witnesses for the appellant
tended to show that the accident did not, and could
not, have happened in the manner claimed by the ap-

pellee. The guards on the train in question testified that on the morning in question no one attempted to board the said train at Forty-second Court at their respective places on the cars in the manner described by appellee; that at said time and place after the passengers were all on the cars, the gates were closed and the signals given by bell to the motorman, and the train left said station without their seeing any man fall or any accident, and each remained at his said post of duty until after the train left the said station; that they knew nothing of the accident until told of the same later that day. It is argued that the appellee's story is improbable and the appellant's theory is that the appellee attempted to get on the car after the gates were closed and while the train was leaving the said station. We confess that on this record the question presented is a very close one, but after a careful examination of all the evidence we have concluded not to disturb the verdict of the jury on the ground that it is clearly and manifestly against the weight of the evidence.

The second ground for reversal urged by appellee is: "The court erred in not excluding all testimony as to the tubercular condition of plaintiff." The appellee testified that when he became conscious at the hospital he had severe pains in his head; that his head was packed in ice and his left arm was in a plaster cast (it was later found to have been broken), and his left leg in a paralyzed condition; his upper front teeth were broken out, and the left side of his face and body scraped and bruised, and he suffered great pain; that on January 26, 1905, he was taken from the hospital to his brother's home in Wisconsin; that he was confined to his bed until April; that in April he began to move about with crutches and then with a cane, and about May 1st came to Chicago and worked at odd jobs in the barber business. The sight of his left eye was destroyed; he was lame and weak and suffered much pain. He continued doing light

work much of the time up to the time of the trial, but claimed he had been for some time growing weaker and poorer in health, and had much trouble with his eyes, head and lungs. Appellee testified that his left wrist was weak and out of shape and bothered him in change of weather; that his left arm was partially paralyzed and smaller than the right arm, and that he . suffered from headaches and pain in the eyes, etc.; that just before the accident he weighed 160 pounds, and at that time was twenty-four years old and in good health, and had no previous trouble with his eyes nor pains in the head, arms, legs, chest or lung trouble, but had a small swelling on the right groin, on which he wore a flaxseed poultice, and thought the swelling had been caused by lifting heavy bolts of cloth. At the time of the trial he weighed 134 pounds. He also testified, over the objection of appellant, that from the spring before the trial, November, 1909, up to August, he had a severe cough, and about six hemorrhages of the lungs. The doctors' and other witnesses' testimony corroborated the testimony of appellee to a great extent as to his injuries and condition, and Dr. Conley, who attended him at the hospital, testified that in his opinion the appellee at the time of the injury had no lung trouble, but at the time of the trial had tuberculosis of the left lung, and also, in answer to a hypothetical question, said: "My opinion is that the injury so weakened the patient that it made his cells susceptible to the invasion of tuberculosis, and the tubercular germs invaded that weakened system and gave the man the disease known as consumption; and that that disease was caused by his weakness, and that weakness is caused by the accident."

In Chicago Union Traction Co. v. May, 221 Ill. 530, the court say: "We think it was a correct practice for the court to permit appellee to prove the condition of her health at and prior to the time she was injured, and then to follow up that proof by showing her physical condition from the time of her injury down to the

time of the trial, and to submit the question of her then physical condition, as a question of fact, to the jury under proper instructions.''

The court, on behalf of the appellant, gave to the jury the following instructions:

''With respect to the ailments and disability claimed for the plaintiff in this case, the law requires him to show by the greater weight of evidence not only that such ailments really exist, but also that they are the result of the accident in question. You have no right to guess or conjecture merely that any ailments complained of by the plaintiff are the result of said accident, but before the plaintiff can recover for any of them he must show by the greater weight of evidence that they do proceed from and are the result of said accident. The burden is not upon the defendant company to show that they arise from any other cause, and even if the evidence is evenly balanced between the plaintiff and the defendant on that question, you cannot allow the plaintiff for any such ailments.''

''You are further instructed that you are not to understand from this instruction that the court intends to intimate that the plaintiff has such disabilities as he claims, or that the defendant is liable, or to intimate any opinion upon that or any other question of fact in this case.''

''The court instructs you that if as to any injury or item of damage claimed by the plaintiff in this case you are unable from the evidence to determine whether the same was proximately caused by the alleged accident in question or whether it arose from any other cause whatever, then as to either such claimed injury or item of damage the plaintiff is not entitled to recover and the jury should not allow the plaintiff anything whatever therefor.''

The testimony that the tubercular condition presented itself so long after the accident seems to raise a doubt as to its being a result thereof; but had a tubercular condition appeared shortly after the accident, would not some doubt also arise as to its being caused thereby? Just at what time and under

what circumstances and how a tubercular condition appears as the result of an accident, seem to us rather difficult questions, and might very properly be the subject of expert testimony. Whether the tubercular condition of the appellee was the result of the accident may seem doubtful, but under the rule announced in Chicago Union Traction Co. v. May, *supra*, it was a question of fact for the jury under proper instructions. The instructions of the court were clear and positive and thereunder the jury could have assessed no damages against the appellant for the said tubercular condition of the appellee, unless the jury believed from the preponderance of the evidence that the said tubercular condition was caused by the accident. In view of the rule prevailing in this state, that it is a question of fact for the jury, and taking into consideration all the circumstances of the case, including the remittitur, we are not inclined to disturb the verdict, and the judgment will be affirmed.

*Affirmed.*